### ELIZA HILGERSON
#### *v.*
### THOMAS B. HICKS *et al.*

*Opinion filed February 18, 1903.*

1. RES JUDICATA—*when a party is bound by former adjudications.* One who was defendant in a suit resulting in the setting aside of a deed to her, and who was also a party to a subsequent proceeding resulting in the sale of the property to pay the debts of her grantor's estate, is bound by such adjudications as respects any contentions relating to her interest in the property which she made or might have made in such cases.

2. CONTRACTS—*when a proposed purchaser is presumed to know that taxes are not paid.* A proposed purchaser of property under a verbal contract may be reasonably presumed to know that the taxes have not been paid for a considerable time, where she held title to the property part of the time, knew it was in litigation and that it had been finally adjudged to belong to a minor, and where she remained in possession after the litigation was ended, receiving the rents.

3. SPECIFIC PERFORMANCE—*when specific performance is properly denied.* Specific performance of a verbal agreement to sell land is properly denied where the defendant, before suit begun, tendered a deed to the complainant and demanded performance according to his understanding of the contract, which the evidence tends to show was correct, and where complainant refused to accept the deed or make performance, but withheld possession of the property and collected rents and profits to an amount exceeding that paid by her on the contract.

APPEAL from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

This is a bill in chancery, filed in the circuit court of Cook county by the appellant, to enforce the specific performance of a verbal agreement for the purchase by her

from the appellee Hicks of the premises known as 70 El-
len street, in the city of Chicago. The appellee filed an
answer and cross-bill, and the cross-bill having been an-
swered and replications filed, the cause was referred to
a master in chancery to take proofs and report his con-
clusions. The master reported, recommending that the
original bill be dismissed for want of equity and a decree
entered in favor of the cross-complainant, canceling the
agreement of sale and decreeing to him the possession
of the premises. Objections and exceptions having been
overruled to the master's report, the court entered a decree
in accordance with the recommendations of the master,
and the record has been brought to this court for review.

It appears from the pleadings, proofs and master's
report that William Johnson, a brother of the appellant,
on June 1, 1887, was the owner of the premises in con-
troversy, which consisted of a lot twenty-six and three-
fourths feet wide, fronting upon Ellen street, with a depth
of seventy-five feet, upon which was located a two-story
frame four-room-flat building; that Johnson being in poor
health, and his wife, Lena Johnson, desiring to visit Eu-
rope, it was arranged that the appellant should move
into the lower flat and care for Johnson until his wife
returned. In November, 1887, Johnson died. Prior to his
death he conveyed the premises to the appellant and her
brother. After the return of Lena Johnson a bill was
filed by Inga Johnson, a minor daughter of William John-
son, deceased, by a former marriage, by her next friend,
against the appellant and others, and the deed from Wil-
liam Johnson to the appellant and her brother was set
aside for want of consideration and the property held
to be the property of Inga Johnson, as heir of William
Johnson, deceased, subject to the rights of Lena John-
son, as widow, and the payment of the debts of William
Johnson, deceased. Lena Johnson was subsequently ap-
pointed administratrix of her deceased husband's estate,
an award was allowed to her and a number of claims pro-

bated against the estate. The widow selected all the personal property, and an application was made and an order entered by the probate court of Cook county to sell said premises to pay the debts of William Johnson, deceased, to which application the appellant was made a party. The premises were sold under said order to the appellee Hicks for $575, the appellant being in possession of the premises. After appellee Hicks had acquired title thereto through said sale, on May 29, 1892, he agreed to sell the premises to the appellant for $650,—$50 of which was paid on the day the agreement of sale was made and the balance was to be paid within a few days, when the premises were to be conveyed to the appellant.

There is a disagreement between the parties as to the terms of sale from appellee Hicks to appellant, the appellant claiming that the premises were to be conveyed to her free and clear of all encumbrances, and the appellee claiming that he was only to quit-claim to her the title which he obtained at the administratrix's sale, she agreeing to take care of any delinquent taxes or tax sales on the property. The appellant has remained in possession of the premises and received the rents from such parts thereof as have been rented, each of said flats, when rented, bringing about $6 per month. During the time intervening between the date of sale and the bringing of this suit, May 17, 1897, the appellant claims to have paid about $200 on the purchase money and to have expended large sums of money in the improvement of the premises. In June, 1893, appellee Hicks tendered the appellant a quit-claim deed for the premises and demanded that she pay him the balance of the purchase money, which she declined to do. He thereupon declared the agreement of sale forfeited and brought forcible detainer to recover possession of the premises. That forcible detainer suit was, upon appeal, dismissed, and another forcible detainer suit subsequently having been brought, this bill was filed.

FREDERICK S. BAKER, for appellant.

FREDERICK S. BAIRD, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The contention of appellant is, as we understand it, that she has an interest in the premises to the extent of the value of the services rendered and the amount of money expended by her in caring for and maintaining William Johnson during his last illness, and the passage money of Lena Johnson on her return home, and for the board of Lena and Inga Johnson subsequent to the death of William Johnson. The appellant made, or could have made, that contention in the suit to set aside the deed from William Johnson to her and her brother. She was also a party defendant in the probate court to the application for an order to sell the real estate to pay debts, wherein the real estate was held to have been the property of William Johnson and subject to sale to pay his debts, and is bound by those adjudications.

It is also said that the appellee Hicks purchased the real estate at the administratrix's sale for the administratrix, and now holds the same in trust for her. The evidence does not sustain such contention, and if it did it would avail the appellant nothing, as this is a suit to enforce a specific performance of an agreement of sale between the appellant and the appellee Hicks, and not to enforce a trust in favor of Lena Johnson, as against said Hicks.

The only other questions in this case are questions of fact, and the one mainly controverted is whether or not the appellant purchased said premises subject to unpaid taxes and tax sales. The master and chancellor held she did, and from a careful examination of the evidence we are of the opinion such holdings are correct. The appellee Hicks purchased the premises at the administratrix's sale, relying upon the statement of the attorney for the

administratrix that the title was good with the exception of the taxes, which had remained unpaid for some time. The appellant had held the title, in part, for a time, knew it had been in litigation, and that it had finally been held to belong to Inga Johnson, a minor. After the litigation was terminated she remained in possession and received the rents, and we think the presumption that she knew the taxes had not been paid, and amounted to a considerable sum, a reasonable one. At the time she agreed to purchase the premises the appellee Hicks informed her that he had paid therefor $575 and agreed to sell the same to her for $650, and he testified he told her she would have to pay up the back taxes. His statement as to the payment of taxes is denied by the appellant and her daughter, but the evidence shows that she immediately went to the attorney for the administratrix, who had represented her in the litigation over the deed made by William Johnson, and informed him that she had bought the appellee Hicks out, and he testified that they talked about the amount of the back taxes, and that he informed her where she could find Glos, who controlled the tax titles, and that she went to his office for the purpose of seeing him about getting the same released. The only payments made upon the agreement of sale by the appellant were $50 paid April 29, 1892, to the appellee Hicks, and $100 paid May 29, 1893, to Runyan & Runyan, who at that time represented Hicks. At the time the last payment was made the appellant accepted the following receipt therefor:

"CHICAGO, ILL., *May 29, 1893.*

"Received of Elisa Hilgeson the sum of one hundred dollars, to be applied upon the purchase money of the William Johnson property if sale is consummated, otherwise to be refunded to her, less fees and expenses incurred in clearing the title for her in that behalf.    RUNYAN & RUNYAN."

The appellant testified she could not read the receipt, but her grown daughter, who could read writing, was

with her at the time she paid the money, and the receipt was delivered to her. Mr. Runyan testified he paid $45 for the continuation of the abstract, and that the balance of the $100 was still in his hands. A claim was made that the appellant paid Runyan & Runyan three payments, aggregating the sum of $50, to apply on the purchase. She produced the receipts of Runyan & Runyan for that amount, which state that the several amounts were received to apply on account, and Mr. Runyan testified the several amounts had been paid to the firm of Runyan & Runyan as fees for services in the suit over the William Johnson deed, and it appears that Runyan & Runyan did not represent the appellee Hicks until about the time the $100 payment was made.

We are unable to determine from this record the amount the appellant expended for improvements upon the premises or the amount she received as rent therefor. It is clear, however, that the rent collected by the appellant not only equaled, but exceeded by far, the amount she paid to the appellee Hicks, Runyan & Runyan, and for improvements, so that in the way of rents she has been more than re-imbursed for all the amounts that she has expended. The evidence shows that the appellee Hicks endeavored to induce the appellant to pay him the balance due him on the agreement of sale and complete the purchase, which she declined to do, and that during the year 1893 he tendered her a quit-claim deed, and upon her refusal to accept the same and complete the purchase he forfeited the agreement of sale. The appellee Hicks has bought in the tax titles based upon the back taxes, and paid all taxes which have accrued upon said premises since 1892, which amount to a considerable sum.

We see nothing inequitable in the decree of the circuit court. It will therefore be affirmed.

*Decree affirmed.*